1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Gregory C. Hesler
WSBA # 34217
Avista Corporation
1411 East Mission Avenue, MSC-33
P.O. Box 3727
Spokane, Washington 99202
Telephone:  (509) 495-2208

LOCAL COUNSEL FOR PLAINTIFFS
COUNSEL FOR AVISTA CORPORATION

*Additional Plaintiffs' counsel on signature page*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

AVISTA CORPORATION,
CASCADE NATURAL GAS
CORPORATION, NORTHWEST
NATURAL GAS COMPANY, and
PUGET SOUND ENERGY, INC.,

Plaintiffs,

v.

MAIA D. BELLON, in her official
capacity as Director of Washington
State Department of Ecology; and
WASHINGTON STATE
DEPARTMENT OF ECOLOGY,

Defendants.

No.

**PLAINTIFFS' ORIGINAL
COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

Plaintiffs Avista Corporation, Cascade Natural Gas Corporation, Northwest

Natural Gas Company, and Puget Sound Energy, Inc. (collectively, "Plaintiffs")

file this civil action to redress violations of the Commerce Clause of the United

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

States Constitution, Article I, Section 8, cl. 3, by greenhouse gas ("GHG") emission regulations adopted by the Washington State Department of Ecology ("Ecology") on September 15, 2016, Chapter 173-442 of the Washington Administrative Code ("WAC"). The adopted "Clean Air Rule" ("CAR") violates the Commerce Clause because it is discriminates against interstate commerce, regulates extraterritorially, and unduly burdens interstate commerce, all of which deprive Plaintiffs of rights, privileges, or immunities secured by the U.S. Constitution and laws. Plaintiffs have commenced this action seeking declaratory relief to have the unconstitutional provisions of the CAR struck down and invalidated as null and void, and injunctive relief to prevent the unconstitutional enforcement of these laws.

## I.  INTRODUCTION

1.     Plaintiffs play key roles in the Washington state energy sector and will all be injured by the restrictions on interstate commerce imposed by CAR. Plaintiffs include electric utilities and natural gas local distribution companies ("LDCs") that work hard with their customers to promote and implement energy efficiency programs while fulfilling their obligation to serve all customers with affordable energy. The economic resources of Plaintiffs' customers differ across their service areas, and, especially for lower-income customers, electricity and natural gas price

ORIGINAL COMPLAINT - 2

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3707
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

increases have disproportionate impacts.  Plaintiffs must keep these effects in mind when engaging in long-term planning.

2.    Plaintiffs agree with Ecology that reducing greenhouse gas emissions is a matter that needs to be addressed.  But the importance of a problem does not warrant the imposition of unconstitutional obligations, nor an unjustified burden on interstate commerce.

3.    CAR applies to three classes of entities: stationary sources located in Washington (e.g., electric power generators, landfill and waste operators, chemical and material manufacturers, etc.), natural gas distributors located in Washington, and petroleum product producers located in or importing to Washington.  *See* WAC 173-442-010.  Notably, CAR covers natural gas distributors and subjects them to an emissions reduction pathway based on *indirect* emissions: those of their non-covered customers.

4.    Covered parties with emissions over certain thresholds must either reduce their emissions along a specified pathway or must purchase GHG emissions "offsets" to account for excess emissions. These "offsets" consist of either in-state "emission reduction units" ("ERUs") or, to a limited and declining extent, out-of-state allowances from states or provinces that have established multi-sector GHG programs.  Over time, covered parties using emissions offsets to meet CAR's requirements may use out-of-state allowances to meet no more than 5% of their

ORIGINAL COMPLAINT - 3

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

compliance goals; they are forced to use in-state ERUs instead. WAC 173-442-170(2)(a).

5.    CAR creates a demand for ERUs and ERU generation.  It then allows only in-state sources to generate ERUs, which could just as easily be generated by out-of-state offset sources, with no impact to the reduction of GHGs.  CAR allows covered parties to use external offset markets for compliance only on a significantly declining scale over time, while simultaneously establishing a one-way linkage to out-of-state GHG offset markets that lets out-of-state allowances into Washington without letting ERUs generated within Washington cross state lines.

6.    As such, CAR creates barriers to interstate commerce and unjustifiably discriminates against out-of-state GHG offsets.

## II.  PARTIES

7.    Plaintiff Avista Corporation ("Avista") generates and transmits electricity to over 360,000 customers and distributes natural gas to over 330,000 customers in eastern Washington, northern Idaho, and parts of southern and eastern Oregon.  It is located at 1411 East Mission Avenue Spokane, WA 99202, in Spokane County.

8.    Plaintiff Cascade Natural Gas Corp. ("Cascade") is a natural gas LDC that serves over 277,000 customers in 96 communities, 68 of which are in Washington

ORIGINAL COMPLAINT - 4

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

and 28 in Oregon.  It is located at 8113 W Grandridge Blvd. Kennewick, WA 99336, in Benton County.

9.    Plaintiff Northwest Natural Gas Company ("NWNG") is a 157-year-old natural gas local distribution and storage company providing natural gas service to more than 718,000 residential, commercial, and industrial customers in Washington and Oregon, 76,000 of which are in Clark County, Washington.  It is located at 220 NW Second Ave., Portland, OR 97209.

10.   Plaintiff Puget Sound Energy, Inc. ("PSE") is Washington's oldest and largest local energy company, serving approximately 1.1 million electric and 790,000 natural gas customers, some of which are located in Kittitas County, Washington.  It is located at 10885 N.E. 4th Street Suite 1200 Bellevue, WA 98004.

11.   Defendant Maia D. Bellon is the Director of Ecology and, as such, signed and adopted the Clean Air Rule, Chapter 173-442 WAC.  Her office is located at Ecology headquarters, 300 Desmond Drive SE, Lacey, WA 98503.  This action is brought against Director Bellon in her official capacity.

12.   Defendant Ecology is an administrative agency of the State of Washington that is charged, among other things, with rulemaking in accordance with the federal and state Clean Air Act.  Ecology was the agency responsible for drafting and issuing the Clean Air Rule, Chapter 173-442 WAC.   Ecology's mailing

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

address is: P.O. Box 47600, Olympia, Washington 98504-7600, and its headquarters are located at 300 Desmond Drive SE, Lacey, WA 98503.

### III.  JURISDICTION AND VENUE

13.    This action arises under 42 U.S.C. §§ 1983 and 1988; 28 U.S.C. §§ 2201 *et seq*. ("the Declaratory Judgment Act"); and Article I, § 8, cl. 3 of the United States Constitution, commonly known as "the Commerce Clause".

14.    This court has jurisdiction over the claims set forth in this complaint under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

15.    Venue is proper in this district under 28 U.S.C. § 1391(b) because the injuries giving rise to Plaintiffs' claims are taking place in this district, because a substantial part of the property that is the subject of the action is situated in this district, and because Defendants are subject to the Court's personal jurisdiction in this district.

16.    This Court is empowered to provide declaratory relief in this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure.

17.    This Court is empowered to provide injunctive relief in this action pursuant to, *inter alia*, 28 U.S.C. § 2202.

### IV.  FACTUAL ALLEGATIONS

### Plaintiffs' Electric and Natural Gas Operations

ORIGINAL COMPLAINT - 6

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

18.    Plaintiff Avista generates and transmits electricity across portions of Washington, Idaho, and Oregon.  In addition, Plaintiff Avista owns and operates a natural gas LDC in Washington, Idaho, and Oregon states.

19.    Plaintiff Cascade owns and operates LDCs in Washington and Oregon states.

20.    Plaintiff NWNG owns a LDC in Oregon that operates in Washington and Oregon states.

21.    Plaintiff PSE owns and draws upon electric generating sources in multiple states across the western United States.  Of PSE-owned generation resources, there are nine natural gas electric generating facilities across Washington.   PSE also holds partial ownership of the Colstrip coal electric generating facility in Montana; two hydroelectric generating facilities; and three wind farms.   In addition to running electric generation operations, Plaintiff PSE owns and operates a LDC in Washington state.

22.    Plaintiffs' LDC operations consist of pipelines and related infrastructure, extending throughout and, for some, beyond Washington state, and providing natural gas to customers for a variety of end-uses across a range of sectors.  Most notably, LDCs supply natural gas to power plants for electricity generation and to homes and businesses for area heating, hot water, cooking, and other purposes.

ORIGINAL COMPLAINT - 7

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

23.    As natural gas distributors in Washington, Plaintiffs are all "covered parties" under CAR. WAC 173-442-020(1)(k)(iii).

24.    Additionally, Plaintiff PSE is a "covered party" under CAR as an owner or operator of stationary sources located in Washington. WAC 173-442-020(1)(k)(i).

### Ecology's Clean Air Rule

25.    On September 15, 2016, pursuant to a directive from Washington Governor Jay Inslee, Ecology finalized "CAR," Chapter 173-442 WAC, a set of regulations designed to reduce GHGs in the State of Washington.  The rule sets thresholds for GHG emissions and requires "covered parties" to reduce their emissions, beginning in 2017, by 1.7% annually from an established baseline.

26.    Under the regulations, covered parties must either directly reduce their GHG emissions to meet an established emission reduction pathway or must acquire GHG emissions offsets to make up the difference between the actual emissions and the target emissions.

27.    Because LDCs consist mostly of pipelines, Plaintiffs have very limited direct emissions and few options for directly reducing emissions.  CAR, however, obligates the LDCs to reduce emissions associated with their customers' use of the natural gas they sell.  As a result, the LDC Plaintiffs have only two options to comply: sell less natural gas, or acquire GHG emissions offsets.

28.    CAR allows covered parties to acquire these GHG emissions offsets by:

ORIGINAL COMPLAINT - 8

a. purchasing ERUs from other Washington sources that reduce emissions below their emission reduction pathway levels;

b. obtaining in-state ERUs by engaging in or investing in a limited list of activities that reduce or abate GHG emissions within Washington state; or

c. to a limited and declining extent, acquiring allowances from other states or provinces that have established, multi-sector GHG programs (such as the California Air Resources Board ("CARB") cap-and-trade program).

## CAR's Regulation of GHG Emissions Offset Market

29.    Through CAR, Ecology creates a restricted, in-state-only market for GHG emissions offsets—ERUs—that favors in-state businesses and investments and excludes out-of-state actors and investments.

30.    Under CAR, covered parties may earn in-state ERUs by reducing GHG emissions in Washington state below their emission reduction pathway, or by engaging in or investing in a limited list of activities, for instance, eligible renewable resources defined by RCW 19.285.030(12), within Washington state.

31.    In addition to covered parties, CAR permits businesses that are not covered by CAR to voluntarily participate in reducing their own GHGs, thereby generating

ORIGINAL COMPLAINT - 9

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

in-state ERUs, with the purpose of selling or trading the ERUs to others. WAC 173-442-030(6); WAC 173-442-110(1).

32.    Under CAR, in-state ERUs may be banked, WAC 173-442-130, bought, sold, or traded. WAC 173-442-140.  Ecology envisions that third parties may facilitate, broker, and assist in the transfer of ERUs. WAC 173-442-140(3).

33.    However, CAR explicitly limits who may hold these ERUs: "Only covered parties, Ecology, and voluntary participants may hold ERUs."  WAC 173-442-140(3)(b).  Because "covered parties" and "voluntary parties" are restricted to Washington entities, this means that only in-state entities may hold ERUs.

34.    CAR also explicitly restricts ERU *generation* to in-state entities and projects, whether the ERU generation occurs directly through actual GHG emissions reduction below required levels, or through the retirement of renewable energy credits ("RECs").  WAC 173-442-100 (ERUs "must originate from GHG emission reductions occurring within Washington"); WAC 173-442-160(5)(b)(i) ("Renewable resources eligible for generating ERUs include eligible renewable resources as defined by RCW 19.285.030(12) except that only those eligible renewable resources physically located *in Washington* may generate ERUs.") (emphasis added).

35.    In contrast to CAR, Washington's renewable portfolio standard ("RPS") does not prohibit out-of-state renewable energy sources from being eligible to

ORIGINAL COMPLAINT - 10

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

generate RECs. *See* RCW 19.285.030(12).  However, CAR prevents out-of-state REC sources from creating ERUs.

## CAR's Regulation of Out-Of-State Allowances

36.    Aside from acquiring in-state ERUs, during initial compliance periods, covered parties may achieve CAR compliance by relying 100% on allowances purchased from out-of-state markets.  But, over time, CAR sets a diminishing cap on the percentage of a covered party's compliance burden that the party can meet using out-of-state allowances, imposing increasingly stringent limits on the use of these allowances until, by 2035, a covered party may use out-of-state allowances for only up to 5% of its CAR obligation.  WAC 173-442-170.

37.    As a result, by 2035, the ERU market, which is limited to in-state generation and in-state holders, will be the predominant method by which Plaintiffs can comply with CAR's requirements.

38.    CAR does not limit the use of external, out-of-state allowances because of concerns about compatibility or equivalency between in-state and out-of-state compliance instruments.  *See* WAC 173-442-170(2)(a).  Ecology expressly acknowledges that the purpose of the declining limits on out-of-state allowances is to "encourag[e] covered parties to obtain ERUs *from Washington State*."  SEPA Environmental Checklist - Clean Air Rule, Appendix A - SEPA Non-Project Review Form Proposed Clean Air Rule (May 2016) at 16.

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

## CAR Discriminates Against Interstate Commerce

39.    CAR restricts ERUs to an in-state market, but Plaintiffs' operations are inherently interstate.

40.    Geographic preference provisions, like CAR's in-state ERU and REC restrictions and diminishing cap on out-of-state allowances, benefit local industries at the expense of out-of-state industries by creating in-state demand for a service and permitting only in-state entities to meet that demand, even though out-of-state entities could meet the demand just as well.

41.    The only motivation by Ecology for setting the geographic preference provisions is economic protectionism.

42.    Ecology asserts that CAR will likely benefit Washington's state economy, including "profits from emissions reduction unit sales and reduction services" and "co-benefits of GHG emissions reduction projects and programs," including "relax[ed] income and spending constraints for low-income families," "reduced traffic," and "[l]ower parking and automotive maintenance costs." Dept. of Ecology, Final Cost-Benefit and Least-Burdensome Alternative Analysis, Ch. 173-442 WAC Clean Air Rule, Ch. 173-441 WAC Reporting of Emissions of Greenhouse Gases, 39 (Sept. 2016); *id*. at 58. Ecology states that on-site GHG emission reductions might use additional employed labor, contracted services, or purchased goods, causing compliance costs to "be mitigated by positive economic

ORIGINAL COMPLAINT - 12

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

activity and employment in these other sectors of the state economy" and that project-based reductions might employ consultants in contracted design, engineering, partnership and development services, causing compliance costs to "be mitigated by positive economic activity in these other sectors of the state economy." Final Cost-Benefit Analysis at 33.

43.    Additionally, Ecology has no explanation, much less one unrelated to economic protectionism, for the gradual restriction on using out-of-state allowances instead of in-state ERUs.

44.    Ecology admits that a reduction in GHG emissions, anywhere, would have the same effect on climate as a reduction within Washington state.  Dept. of Ecology, Concise Explanatory Statement, Ch. 173-442 WAC Clean Air Rule, Ch. 173-441 WAC Reporting of Emissions of Greenhouse Gases, Summary of Rulemaking and Response to Comments, Response 268, 122 (Sept. 2016) ("climate change is unique in that a reduction in GHGs in one part of the globe has the same effect on climate as a reduction in another location").

45.    In limiting the use of out-of-state allowances, Ecology's only aim is to block out-of-state wealth transfers: to keep money from flowing outside of Washington as covered parties comply with CAR.  *See* Final Cost-Benefit Analysis at 33.

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

46.   As Plaintiffs turn to the marketplace to acquire GHG emissions offsets in satisfaction of CAR, CAR will restrict that marketplace in order to prevent wealth-transfers out of state.

47.   And, longer-term, the practical effect of CAR's limitation on the use of out-of-state allowances will be to force LDCs to invest in *in-state* offset projects. Ecology will have restricted to in-state--at least up to 95%--the market for LDCs to spend their money to acquire the GHG emissions offsets needed to comply with CAR.  LDCs will have no other options.

48.   Ecology expressly acknowledges that the purpose of the declining limits on out-of-state allowances is to "encourag[e] covered parties to obtain ERUs *from Washington State*"—a motive clearly related to economic protectionism. Appendix A - SEPA Non-Project Review Form Proposed Clean Air Rule, at 16. Ecology even notes that "[m]arket-based purchases of emissions allowances from external carbon markets would be *transfers out of the state. These compliance costs would not likely be mitigated* by positive economic activity in other sectors of the state economy."  Final Cost-Benefit Analysis at 33 (emphases added).

### Ecology's CAR Provisions Regulate Extraterritorially

49.   CAR regulates extraterritorially by allowing for only "one-way linkage" to out-of-state carbon markets that will increase allowance prices in those external markets, which will harm Plaintiffs seeking to acquire these out-of-state

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

allowances.  Final Cost-Benefit Analysis at 69.  This one-way linkage only allows out-of-state allowances into Washington (at a diminished rate over time) without letting ERUs generated within Washington cross state lines.

50.    CAR will add participants to the out-of-state allowance markets (e.g., the CARB market) and, as a result, increase demand for the limited pool of allowances, without increasing the supply of allowances in that market. The net effect of increasing demand without increasing supply will be to raise the price of out-of-state allowances. This would control conduct occurring entirely outside of Washington's borders (e.g., allowance sales between two CARB-covered parties in California).

51.    Additionally, CAR limits how covered parties that may generate in-state ERUs, like PSE's and Avista's electric generating branches, may sell, trade, or dispose of those ERUs—limiting the use to in-state.  CAR deprives Washington entities the freedom to generate and sell ERUs to any willing buyer across state lines; despite their being a clear market for such GHG emissions offsets.

## CAR Unduly Burdens Interstate Commerce and is Clearly Excessive When Compared with Any Putative Local Benefit

52.    Plaintiffs do not dispute that reducing greenhouse gas emissions is a legitimate local purpose.  But Defendants cannot show that there is no non-discriminatory alternative to CAR for achieving this legitimate local purpose.

ORIGINAL COMPLAINT - 15

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

53.    Ecology considered various mechanisms for GHG regulation before finalizing CAR.  Many of these would have been less burdensome than CAR while achieving the same, if not greater, local benefits, including (i) linking the Washington program directly to existing market programs; and (ii) excluding natural gas as a covered emissions category.  Final Cost-Benefit Analysis at 69 (after considering "[l]inking the Washington State program directly to existing market programs," the final CAR only "provides the possibility for *one-way linkage* to existing systems" like CARB).

54.    CAR's burdens on interstate commerce are clearly excessive in relation to the regulation's putative local benefits.

55.    CAR could impose significant costs on Washington businesses and consumers, without achieving any real climate benefits to Washington state. Indeed, Ecology acknowledges that "it is not possible to specify the local benefits to climate change resulting from control of local emissions." Final Cost-Benefit Analysis at 42.  Additionally, Ecology admits that "climate change is unique in that a reduction in GHGs in one part of the globe has the same effect on climate as a reduction in another location."  Ecology Response to Comments, Response 268, at 122.

56.    Further, CAR could *increase*, not decrease, net GHG emissions on a regional basis—undercutting any potential local benefits from lowered in-state

ORIGINAL COMPLAINT - 16

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

GHG emissions.   Under CAR, Plaintiff PSE, which relies on fossil generation sources in both Washington and other Western Interconnection states, will be incentivized to shut down or reduce operation of its efficient, lower-emitting natural gas combined cycle plants in Washington and increase reliance upon coal-fired generation or other higher-emitting sources located in other Western Interconnection states.

57.    This means CAR's only tangible local benefits would come from reduced in-state emissions of conventional pollutants (such as nitrogen oxides or fine particulates), as a side-effect or "co-benefit" of lowered GHG emissions. Yet, Ecology acknowledges that "some projects to reduce GHGs may result in the *increase* of conventional pollutants."  Appendix A - SEPA Non-Project Review Form Proposed Clean Air Rule, at 9.  These projects could cause other local harms as well, such as increases in wastewater discharges and new noises and odors.  *Id*. at 10.

58.    Given CAR's significant burdens and uncertain (at best) and illusory (at worst) local benefits, CAR is clearly a burden to interstate commerce.

## **Injury**

59.    CAR creates barriers to interstate commerce through the creation of a market for GHG emissions offsets within Washington state with artificial market constraints, namely, that one such offset, in-state ERUs, can only be generated by

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

in-state projects or programs, and can only be bought, sold, or traded by in-state entities, despite their being a market in other states (e.g., CARB) for such offsets.

60.    CAR also creates further barriers to interstate commerce through its unjustified limitation, over time, of the transfer of other GHG emissions offsets—out-of-state allowances—into Washington for the purpose of complying with the regulation.

61.    Plaintiffs are harmed by CAR's protectionist provisions because the rule requires Plaintiffs to purchase GHG emissions offsets but imposes artificial market constraints--namely, restricting the market to in-state projects and programs--that drive up compliance costs.  Out-of-state service providers exist (e.g., out-of-state REC generators and offset providers) that could otherwise satisfy the demand for ERUs and, by creating greater supply, would drive down the price LDCs must pay for ERUs.

62.    Plaintiffs are further harmed by CAR's protectionist provisions because CAR deprives Washington entities, including PSE's and Avista's electric generating branches, of the freedom to generate and sell in-state ERUs to any willing buyer across state lines.  If Ecology had adopted a version of CAR with a direct--not a one-way linkage--to external markets, Plaintiffs could have participated with other covered entities in CARB or other markets, trading quantities of GHG reductions like other products, in satisfaction of both programs.

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

63.    CAR also deprives Plaintiffs of the freedom to purchase out-of-state allowances over time for no other reason than economic protection.  LDCs like Plaintiffs will be forced to purchase in-state ERUs in a market that Ecology has constrained for no other reason than to prevent wealth transfers out of state.

## V.  CAUSES OF ACTION

### Count I - Violation of the Commerce Clause of the U.S. Constitution

64.    Plaintiffs re-allege paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.    The United States Constitution provides that Congress shall have the power "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, Section 8, cl. 3.

66.    A state law that discriminates against interstate commerce is invalid as unconstitutional. "Discrimination" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99, 114 S. Ct. 1345, 1350, 128 L. Ed. 2d 13 (1994).  Discriminatory laws motived by economic protectionism are virtually *per se* invalid.  *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978).

67.    CAR discriminates against interstate commerce, and the Plaintiffs, because it restricts the market for GHG emissions offsets and favors in-state offsets over out-

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

of-state offsets: it restricts Plaintiffs from offsetting GHG emissions with out-of-state projects and programs and restricts who may hold ERUs to in-state entities, depriving Plaintiffs the freedom to sell their ERUs to any willing buyer across state lines.

68.    CAR also discriminates against interstate commerce, and the Plaintiffs, because it limits imports of out-of-state allowances over time for no justifiable reason other than to stop wealth transfers out-of-state.

69.    These restrictions imposed by CAR discriminate against interstate commerce for the sole purpose of economic protectionism.

70.    Even nondiscriminatory regulations that regulate evenhandedly to effectuate a legitimate local public interest, and that have only incidental effects on interstate commerce, are nonetheless invalid if the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, (1970).

71.    CAR's restrictions unduly burden interstate commerce by artificially limiting the market for GHG emissions offsets, by limiting out-of-state allowances over time, by allowing only one-way linkage to external markets, and by inflating prices for in-state ERUs over time.

72.    These burdens are excessive in relation to the regulation's putative local benefits, which are insignificant and illusory, where Ecology admits "that a

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

reduction in GHGs in one part of the globe has the same effect on climate as a reduction in another location." Ecology Response to Comments, Response 268, at 122.

73.    Thus, CAR is not justified by any valid public welfare, safety, or environmental purpose unrelated to economic protectionism.

74.    Further, Washington is not a market participant in any field related to CAR.

75.    For these reasons, CAR violates Article I, Section 8, cl. 3 of the United States Constitution, commonly known as "the Commerce Clause."

76.    The CAR provisions governing in-state ERUs and out-of-state allowances are not severable from the balance of the CAR regulations because they are Plaintiffs' sole means of compliance.

77.    As a result of Defendants' violation of the Commerce Clause, Plaintiffs have suffered and will continue to suffer injury, which will be redressed by a favorable decision from this court. CAR should be stricken as unconstitutional and/or its enforcement should be enjoined, as it threatens Plaintiffs with irreparable injury for which there is no adequate remedy at law.

## Claim II- 42 USC 1983

78.    Plaintiffs re-allege paragraphs 1 through 77 of this Complaint as if fully set forth herein.

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

79.    The challenged regulations deprive Plaintiffs of rights, privileges, and immunities secured by the Constitution and the laws of the United States.    The challenged regulations thus constitute a deprivation of rights actionable under 42 U.S.C. § 1983.

## VI.  REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following:

1)    An order declaring and adjudicating that WAC 173-442 is unconstitutional, and therefore invalid and unenforceable, to the extent it discriminates against interstate commerce by restricting offsets based on GHG emissions reductions to in-state projects and programs (to the exclusion of projects that could generate the same emissions offsets but are located outside Washington) and, over time, limits the importation into Washington of out-of-state allowances based on GHG reductions outside of Washington for no other reason than to protect against wealth transfers out of state.

2)    An order enjoining Defendants from enforcing WAC 173-442;

3)    An order awarding Plaintiffs the costs and expenses incurred in the instant litigation, including their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

4)    Such other relief as the Court deems just and proper.

Gregory C. Hesler
1411 East Mission Avenue,  MSC-33
P.O. Box 3727
Spokane, Washington  99202
Phone (509) 495-2208  Fax (509) 777-9885

Dated: September 27, 2016

Respectfully submitted,

_/s/ Gregory C. Hesler_

William Bumpers*                         Gregory C. Hesler (WSBA # 34217)
Megan H. Berge *                         Avista Corporation
Baker Botts L.L.P.                       1411 East Mission Avenue, MSC-33
1299 Pennsylvania Avenue, NW             P.O. Box 3727
Washington, DC 20004                     Spokane, Washington 99202
Telephone: (202) 639-7700                Telephone: (509) 495-2208
Fax: (202) 639-7890                      Fax: (509) 777-9885
william.bumpers@bakerbotts.com           Greg.Hesler@avistacorp.com
megan.berge@bakerbotts.com
                                         LOCAL COUNSEL FOR PLAINTIFFS
Samia R. Broadaway*                      COUNSEL FOR AVISTA
Baker Botts L.L.P.                       CORPORATION
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
Telephone: (512) 322-2500
Fax: (512) 322-3676
samia.broadaway@bakerbotts.com

 COUNSEL FOR PLAINTIFFS

*motion to appear *pro hac vice*
forthcoming

ORIGINAL COMPLAINT - 23